# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK,<br><br>Plaintiff(s),<br><br>v.<br><br>SHEILA WASHINGTON, et al.,<br><br>Defendant(s). | Case No. 2:18-CV-513 JCM (NJK)<br><br>ORDER |

Presently before the court is plaintiff/counter-defendant Bank of New York Mellon's ("BNYM") motion for summary judgment. (ECF No. 53). Defendants/counter-claimants Lisa Fears and Sheila Washington ("defendants") filed a notice of non-opposition. (ECF No. 65).

**I.  Background**

The instant action arises from a dispute regarding real property located at 3135 S. Mojave Rd., Unit 103, Las Vegas, NV 89121.

In June 2006, Rafael Lobaina and Jesseca Monge borrowed $150,320 from Countrywide Home Loans, Inc. (ECF No. 53 at 3). Lobaina and Monge used the money to purchase 3135 S. Mojave Rd., Unit 10. *Id.* Lobain and Monge executed a deed of trust, granting the beneficiary—Mortgage Electronic Registration Systems, Inc. ("MERS")—a security interest in the property. *Id.* All beneficial interest in the deed of trust was assigned to BNYM on April 28, 2011. *Id.*

Lobaina and Monge stopped paying their monthly dues to Sevilla Homeowners Association ("the HOA"). *Id.* On July 1, 2013, the HOA's agent, Alessi & Koenig, LLC ("A&K") recorded a notice of delinquent assessment lien against the property. *Id.* A&K recorded a notice of default and election to sell on September 24, 2013. *Id.* at 4.

**James C. Mahan**
**U.S. District Judge**

BNYM contacted A&K and requested a payoff ledger detailing the superpriority lien amount.[1] *Id.* A&K responded with a ledger that indicated a current balance due of $4,228.88 but did not specify the superpriority amount. *Id.* The ledger did provide that the HOA's monthly assessments were $175 and that "the total amount of assessments, late fees, pre-lien fees, and interest" was $1,215. *Id.*

BNYM tendered $1,575 to satisfy the superpriority portion of the HOA's lien, which A&K accepted. *Id.* at 4–5. Nonetheless, A&K filed a notice of trustee's sale on March 4 and conducted a lien foreclosure sale on June 4, 2014. *Id.* at 5. Washington was the highest bidder. *Id.* A week later, Washington transferred the property to herself and Fears as joint tenants. *Id.*

On March 20, 2018, BNYM filed the instant action to quiet title, seeking a declaration that its first priority deed of trust survived the foreclosure sale and encumbers the property. (ECF No. 1). On October 25, 2018, defendants filed an amended answer, counterclaim, and third-party complaint to quiet title in their favor. (ECF No. 39).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come

---

[1] BNYM contacted A&K through its loan servicer's counsel, Miles, Bauer, Bergstrom & Winters, LLP. (ECF No. 53 at 4).

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

### III. Discussion

Here, defendants do not oppose BNYM's motion for summary judgment. (ECF No. 65). Pursuant to Local Rule 7-2(d), an opposing party's failure to file a timely response to any motion constitutes the party's consent to the granting of the motion and is proper grounds for dismissal. LR 7-2(d). However, the Ninth Circuit has held that a court cannot grant a summary judgment motion merely because it is unopposed. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 949-50 (9th Cir. 1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district court cannot grant a motion for summary judgment based merely on the fact that the opposing party failed to file an opposition). Consequently, Local Rule 7-2(d) specifically exempts motions for summary judgment from the general rule. LR 7-2(d).

Thus, even without an opposition, the court must apply standards consistent with Federal Rule of Civil Procedure 56, determining if the moving party's motion demonstrates that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry*, 983 F.2d at 950; *Martinez*, 323 F.3d at 1182.[1]

BNYM moves for summary judgment, requesting the court to declare that the deed of trust still encumbers the property. (ECF No. 53). BNYM contends that the foreclosure sale did

---

[1] "[S]ummary judgment cannot be granted by default, even if there is a complete failure to respond to the motion." Fed.R.Civ.P. 56, 2010 cmt. to subdivision (e). The court may only grant summary judgment if "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

James C. Mahan
U.S. District Judge

- 4 -

not extinguish BNYM's deed of trust because BNYM tendered—and A&K accepted—the superpriority portion of the lien. (*Id.*).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, a party must show that its claim to the property is superior to all other in order to succeed on a quiet title action. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

NRS 116.3116 *et seq.* ("Chapter 116") of the Nevada Revised Statutes[2] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Under NRS 116.3116(2), HOA liens have priority over other encumbrances. Nev. Rev. Stat. § 116.3116(2). However, some encumbrances are not subject to an HOA lien's priority, including "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

. . .

. . .

. . .

. . .

. . .

. . .

. . .

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

Chapter 116 then provides an exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether BNYM has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, BOA could have paid off the SHHOA lien to avert loss of its security . . ."). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411; *Horizons at Seven Hills Homeowners Association v. Ikon Holdings, LLC*, 373 P.3d 66 (Nev. 2016).

In *Bank of America*, the Nevada Supreme Court held that a foreclosure sale did not extinguish a first deed of trust when Bank of America, the holder of the deed of trust, used the HOA's representations to calculate and tender the sum of nine months of delinquent assessments. *Bank of America, N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 121 (Nev. 2018) ("*Bank of America*"). Although the superpriority portion of an HOA lien typically includes maintenance and nuisance abatement charges, the court held that "Bank of America tendered the correct amount to satisfy the superpriority portion of the lien . . . [because] the HOA did not indicate that the property had any charges for maintenance or nuisance abatement." *Id.* at 118.

The Nevada Supreme Court's holding in *Bank of America* controls the court's analysis in this case. Like *Bank of America*, where Bank of America relied on the HOA's representations to calculate nine months of assessments, BNYM relied on the HOA's ledger to calculate nine months of assessments. *See id.* at 118; (ECF No. 37-1).

Further, as in *Bank of America*, A&K did not indicate that the property had any charges for maintenance or nuisance abatement. *See Bank of America*, 427 P.3d at 118; (ECF No. 37-1). Thus, when BNYM sent a check for nine months of assessments to A&K, it properly tendered the superpriority portion of the lien. More importantly, A&K accepted BNYM's tender, extinguishing the HOA's superpriority lien. Consequently, the sale foreclosed on only the subpriority portion of the HOA's lien.

Therefore, the nonjudicial foreclosure sale did not extinguish the deed of trust. *See id.* at 121 ("It follows that after a valid tender of the superpriority portion of an HOA lien, a foreclosure sale . . . cannot extinguish the first deed of trust"). BNYM's motion for summary judgment is granted.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BNYM's motion for summary judgment (ECF No. 53) be, and the same hereby is, GRANTED.

. . .

. . .

1       IT IS FURTHER ORDERED that BNYM shall file a proposed judgment within twenty-one (21) days of this order.

DATED November 26, 2019.

                                              /s/ James C. Mahan
                                        UNITED STATES DISTRICT JUDGE